Parker, J.
Actions similar to this are frequently instituted at the instigation of judgment debtors for the purposes of revenge or delay; and there has been a prevailing opinion at the bar that such actions may be supported. This opinion arose from the very general and comprehensive words of the statute, by which all the goods, effects and credits of the debtor are made subject to this species of attachment, in whose hands or possession soever they may be found. Notwithstanding these expressions, it was decided that an aggregate corporation is not liable to this process, because they are not capable of disclosing upon oath.
I am very glad that the question in this case is presented to us in so simple a form, that it may be put at rest, and a check given to a practice, from which much mischief has unquestionably arisen.
When an officer receives money upon an execution, the law pre* scribes his in relation to it. He is not bound to it ever *255 to the creditor until the return day of the execution. * From his receipt of it until that day, it is not the cred- [ * 290 ] itor’s money, but is in the custody of the law; and in some respects it is still under the control of the law. I cm decidedly of opinion that the trustee in this case cannot be held.
Sewall, J.
I consider the statute giving this process of foreign attachment as a very beneficial one, and am therefore for applying a liberal construction to it. But there must be bounds to this liberality. In the case before us, an officer, in execution of a precept of the law, has received money, for which he is accountable to a third person. An attempt is made to interrupt the execution of the precept, and to divert the money from the course which the law has prescribed. If such practice should be permitted, great inconvenience and mischief would be the consequence. The money was in the custody of the law, and in my opinion was not liable to be arrested in the hands of the officer.
Sedgwick, J.
Contracts understandingly and fairly entered into, by those who have power to contract, on proper subjects of contract, are of moral obligation, binding on the parties, and ought to be per formed, according to their true intention. In civil society there is nothing more important, as conducive to the public welfare, than that, on the non-performance of such contracts, the law should give a speedy and effectual remedy to the injured party. On this principle, one of the best foundations of national prosperity essentially depends. Hence it results that the law should never interfere between the contracting parties, either to suspend the execution of a contract according to its stipulations, or to suspend or prevent the remedy of the injured party, but in instances where some purpose of public utility renders such interference manifestly necessary. From these observations it appears that the act under consideration, which is intended, in some instances, to suspend the execution of a contract, and, in others, to deny to the injured party a remedy for the breach of it, ought to receive a strict construction, and should not be extended beyond the objects manifestly intended by the legislature.
The title of the act is, “ An act to enable creditors to receive their just demands out of the goods, effects and credits *of their debtors, when the same cannot be attached [* 291 ] by the ordinary process of law.” The preamble recites, “ Whereas the goods, effects and credits of persons are oftentimes so intrusted and deposited in t.he hands of others, that the same cannot be attached by the ordinary process of law, to satisfy such judgments as may be recovered against such persons; ” to remedy which, it enacts “ that goods, effects and credits so intrusted and deposited *256 may be attached,” in whose hands or possession soever they may be found, “ by an original writ in any personal action, excepting detinue, replevin, actions on the case for slanderous words or malicious' prosecution, or actions of trespass for assault and battery.” So that goods, effects and credits so intrusted and deposited are attachable on various actions for torts, sue!) as trover, &c., and even in actions of trespass quare clausum fregit. This is a very extraordinary, and, as far as I know, unprecedented authority for interfering in contracts, and a strong reason why a strict construction should be given to the statute. With this rule for the construction of the act, the question arises, Is money collected by a sheriff on an execution, such goods, effects and credits, so intrusted and deposited in his hands, as to be attachable by a writ against the judgment creditor? 1. Is it the goods, effects or credits of the judgment creditor ? 2. Is it so intrusted and deposited in the hands of the sheriff within the meaning of the act ?
1. Is such money the goods, effects or credits of the judgment creditor ? I think not. It is neither the goods nor effects oí the creditor. There cannot exist a property in any subject whatsoever, so as to constitute it the goods and effects of an individual, without an ownership in the identical subject. But in this case Darling, the officer, was under no obligation to pay to Bailey the identical money he received of Wilder, the judgment debtor, which he would- have been, were it either the goods or effects of Bailey.
This question is decided in the case of Turner vs. Fendall (1), determined in the Supreme Court of the United States. [ * 292 ] The chief justice, in delivering the opinion of the * Court, has considered many of the cases on this subject. It appears to have been the unanimous opinion of the Court, that money collected by an officer is not, while in his hands, the property of the creditor. I have no. doubt of the correctness of this principle, from all the notions which I have entertained as to property in personal chattels. But in that case, the Court does not seem to have adverted to the incalculable mischiefs which must result from the establishment of a contrary principle, in the means it would afford to prevent the execution of judgments of Court.
Neither can this money, in my opinion, be considered as a credit in the hands of the officer. There cannot be a credit without a creditor and a debtor. There is nothing, in the reason of the thing, resulting from the relation of a judgment creditor, and an officer, who has collected money for him, which renders the one a creditor, an I the other a debtor. There is nothing said in any of the books, *257 which implies that that relation exists between them. On the contrary, money so collected is in the custody of the law, ana the sheriff is the trustee for its safe keeping. Money then, I think, under such circumstances, is not the goods, effects or credits of the judgment creditor in the sense of the act. Were it, however, otherwise,
2. Was this money so intrusted and deposited in Darling’s hands, that, within the meaning of the statute, it is attachable by a writ against Bailey ? By whom it must be intrusted and deposited, to render it attachable, appears by the words of the process, which the statute has prescribed, which, so far as respects this subject, are, “ And whereas the said E. F. saith that the said A. B. hath not in his own hands or possession goods and estate to the value of-dollars aforesaid, which can be come at to be attached, but has intrusted to and deposited in the hands of J. K., of, &c., trustee of the said A. B., goods, effects, and credits, to the said value.” Now, was this money intrusted and deposited by Bailey in the hands of Darling l If not, and the statute is, as I think I have proved, to have a strict construction, then it is not, by the words of the writ themselves, attachable. It is true that Bailey intrusted the officer with * the writ of execution ; but he did not [ * 293 ] intrust him with the money, which was deposited in the hands of Darling by the judgment debtor, and not by the defendant in this action.
I confess that I should have been extremely sorry to have found that the attempt to charge the officer as the trustee of the judgment creditor could have been supported. If it could, a principle would have been established, that an execution, which has been justly called finis et fructus of legal pursuits, might be eternally defeated. A judgment debtor would have had nothing more to do, when he had paid the money, than to engage a friend, who had, or who would pretend that he had, a demand against the creditor, and fix the money in the hands of the officer, as long as there could be any pretence of keeping alive the suit; and when that could no longer be done, a new action might be instituted, and the same consequences ensue, and so on ad infinitum.. This might be done independently by the debtor, merely to gratify revenge; it might be done by collusion between the officer and the debtor ; or it might be done even by the officer alone, to secure to himself the use of the money, which, from its amount, might vastly overbalance the trifling expenses which he would incur. It is true that an officer thus, conducting might be punished, if he were detected; but he might not be detected; and if he was detected, his punishment would give no satisfaction to the creditor for his delay and vexation.
*258 Parsons, C. J.
The question submitted to the Court is whether Joseph Darling, on the facts disclosed by his answers to the interrogatories in the case, is the trustee of the defendant Bailey.
The facts material to the decision of this question are, that before the service of this writ on Darling, Bailey had recovered a judgment against one Caleb Wilder; had sued out and delivered Darling, a deputy sheriff, an execution on that judgment; that Darling had, by virtue of that execution, levied the sum of 99 dollars, 47 cents, which at the time of the service of this writ he held in his hands; that the execution was not returnable till a day after he was sum maned as -trustee; and it does not appear that Bailey, the judgment creditor, had ever demanded of Darling the money he had so levied.
[ * 294 ] * If Darling, therefore, was a trustee of Bailey, at the time he was so summoned, it must be in virtue of the moneys he had levied on that execution. Those moneys must at that time have been the effects of Bailey; or by reason of the levy he must have been a debtor to Bailey, and so held Bailey’s credits in his hands.
The statute on which this process is founded, reciting that the goods, effects and credits of persons are oftentimes so intrusted and deposited in the hands of others, that the same cannot be attachec by the ordinary process of law, provides that any goods and effect so intrusted and deposited, may be attached in whose hands or possession soever they may be found, by virtue of a process there described ; and when the attachment is made by virtue of that process, the goods, effects and credits of the principal in the hands and possession of the trustee shall stand bound and be held to satisfy the judgment, which the plaintiff in the process may recover. If, therefore, the money thus levied and holden by Darling, are goods, effects or credits of Bailey, intrusted to him, or deposited in his hands, within the true intent of this statute, then Darling must be adjudged to be the trustee of Bailey.
It may be useful to consider the relation at common law between the sheriff and the judgment creditor, after the sheriff has made the debt on a fieri facias. If, before the return of his execution, he voluntarily pay the money to the creditor, the Court will allow of it, because the creditor is satisfied; but he is not obliged to do it, for if he bring the money into Court on .the return of his execution, the writ will be obeyed. While he holds the money it is not the property of the creditor, and no action will lie against him until he is guilty of a breach of his duty in not returning the execution with the money into Court at the return day. In Cro. Car. 166, 176, there is reported the case of Benson If Wife vs. Flower, and the *259 Assignees of Benson. Benson and his wife in her right had recovered against Flower a judgment for £12, which Flower on a copias lid satisfaciendum had paid to the sheriff. Afterwards, and before the return of the execution, Benson became a bankrupt, and his effects were duly assigned. The sheriff brought the money * into Court, and the assignees moved to have it [ * 295 ] paid out to them. But it was refused, because it was not the bankrupt’s money, until it was paid to him, and in the mean time it was in the custody of the law. A further reason was given, because the assignees were not parties to the record, and could not discharge the judgment.
When we advert to our own statutes, a different duty is prescribed to the sheriff who has levied money on an execution. He must return his writ, with his doings thereon ; but he is not obliged to bring the money into Court. The money remains in his hands, in the custody of the law, until the judgment creditor demand it of him. If, on demand made, after he has received the money, either before or after the return of the execution, he refused to pay the money to the creditor, he is then guilty of a breach of duty, and the law will no longer protect him in holding the money. From that moment an action lies against him by the creditor to recover the money received, with thirty per cent, interest until he pay the money , and the sheriff may be considered as holding the credits of the judgment creditor. But so long as he holds the money as a servant of the law, the law will protect him in the possession. The same rule applies to chattels. In 1 Show. 174, and 4 Term R. 651, Farr vs. Newman, it is holden that goods lawfully seised on a fieri facias are in the custody of the law, so that they cannot be seised again by the same or any other sheriff.
Let us now apply these principles to the case before us. Barling, not by any authority from Bailey, but as a minister of the law, levied the money of Wilder. After he had received the money, it was in his possession in custody of the law, and was not the goods or effects of the judgment creditor. And it does not appear that Barling, at any time before he was summoned as a trustee, had been requested by Bailey to pay him the money. At that time, therefore, he had been guilty of no breach of duty; no action could be maintained by Bailey against him, as nothing was then due from him to Bailey. Barling consequently had in his hands or possession no credits of Bailey. And if he had not in his hands any goods, effects or credits of Bailey, certainly he was not his trustee.
* This reasoning, deduced from the principles of the [ * 298 J common law, which is always a safe guide, is confirmed by the natural import of the words of the statute, on which this *260 process is founded. The statute speaks of goods, effects and credits intrusted to and deposited with others, so that they cannot be attached by the ordinary process of law; a language implying an agency or privity of the debtor to place his property beyond the reach of ordinary attachment. Now the sheriff levying money upon an execution is not the agent of the creditor. He can name no agent, but is obliged to deliver his execution to an officer appointed by the supreme executive, and deriving all his authority from the law. Indeed, before a different decision can prevail, the design of the legislature must be very clear, that any person claiming to be a creditor, when perhaps there is no color for his claim, but his real object is to assist the judgment debtor, or the officer, to detain the money, may arrest the process of a court of record issued to execute a judgment, by controlling or suspending the powers and duties of the ministers of the law, deriving their authority from precepts which they ought to obey (1).
J. Fay, for the plaintiff.
Dana and Locke, for the trustee

Trustee discharged.

 1 Cranch's Rep. 117

 [Pollard vs. Ross & Trustee, 5 Mass. 319.—Barnes vs. Treat & Trustee, 7 Mass. 271.—Penniman vs. Ruggles & Trustee, 6 Mass. 166.—Sharp vs. Clark & Trustee, 2 Mass. 91 .—Brooks vs. Cook & Trustee, 8 Mass. 246.—Chealy vs. Brewer & Trustee, 7 Mass. 259.—Ed.]