W. R. LOVEJOY & CO. *v.* J. S. LEE AND TRUSTEE N. C. BACON.

*Attachment. Bank Bills. Trustee Process. Commissioner. Practice. Duress. Officer. Recovery of Money Illegally Retained.*

When a commissioner is appointed in a trustee case, the whole case as to the liability of the trustee is referred, and when the commissioner professes to report the facts, and makes no reference to the disclosure as containing further facts, the statements in the disclosure can not be regarded by the court.

Bank bills may be attached upon *mesne process.*

Coin, bank bills or money, which have been attached on *mesne process,* and remain in the attaching officer's hands after the settlement of the suit, may be again attached by trusteeing the officer.

*Quere,* whether a debtor, who has, at the request of an officer having a writ of attachment against his property, and with knowledge that the officer desires to make an attachment thereon, unlocked a drawer in his house containing bank bills belonging to him, has not so far put the officer within reach and control of the bills, as to deprive himself of the right to seize them while the officer is in the act of taking them, and thereby to defeat the attachment. PECK, J.

But if the officer treats such bills as attached by him, and the debtor acquiesces therein, the officer will, after the dissolution of the attachment by the settlement of the suit, be held as the trustee of the owner of the bills.

Lovejoy et al. *v.* Lee and Trustee.

An officer, who had made an attachment of bank bills, refused to return them to the owner upon the dissolution of the attachment, unless the owner would agree that he might retain a part of them, as a pretended reward for the finding of them by the officer. *Held*, that such agreement was compulsory upon the debtor and not binding, and that he might recover tha money so retained, or upon evidence that he elected to avoid the agreement, it might be attached in a suit against him by trusteeing the officer.

*Quere*, whether it could not be so attached without any such evidence?

TRUSTEE PROCESS. The cause was referred to a commissioner, as to the liability of the trustee, who reported the following facts :

The defendant Lee, being largely in debt and insolvent, shortly previous to the attachment hereinafter mentioned, claimed that he had lost $2500 in bank bills, and publicly offered a reward for finding the same, but there was great reason to doubt whether any such loss occurred, and to believe that the claim and advertisement were merely a pretence to enable Lee to effect a compromise with his creditors. The trustee Bacon, who was a deputy sheriff, attached, upon a writ against Lee placed in his hands for service, six hundred dollars in bank bills, under the following circumstances :

These bills and a bag of specie were in a bureau drawer in Lee's house, which drawer was locked. This drawer was unlocked by Lee or his wife, at Bacon's request, in the presence of the three. Lee and his wife both knew for what purpose Bacon was there. Each of these three persons scrambled for the contents of the drawer. Lee grasped the bag of specie. His wife first got possession of the roll of bank bills, but Bacon seized and took them from her, and kept them until the suit was settled, as mentioned below. Shortly afterwards the suit on which this attachment was made was settled by Lee, whereupon Bacon refused to surrender to Lee the bank bills which he had attached, until Lee signed a paper acknowledging that Bacon had found and paid to him six hundred dollars of the money which he had lost and advertised a reward for, and that he had paid Bacon the proper proportion of the reward he had offered for the discovery of all the money. Bacon retained fifty dollars of the money, which he claimed to

hold as a reasonable share of the reward for finding the six hundred dollars in bank bills ; but in fact he found no money of Lee's, except in the manner above detailed. Lee was induced to sign the paper above described, not only by the fact that Bacon was an officer of the law, and held the six hundred dollars by attachment, but also by the fact that another officer with a writ against Lee had come into the house, and was clamoring at the door for admittance, while Bacon held the money and was refusing to surrender it until Lee should sign such paper. Lee was desirous to conceal from the public the fact that he had this money, and he and Bacon so understood when Lee executed the above mentioned paper to Bacon. Bacon claimed to have a right to retain, and did retain up to the hearing before the commissioner, the fifty dollars which he reserved out of the six hundred dollars he attached, by virtue of the paper executed to him by Lee as above mentioned. Lee, up to the hearing before the commissioner, never made any claim on Bacon for the fifty dollars retained by him, and had no interest in it, except that, if the plaintiff should not recover it of Bacon, Lee was to pay the plaintiff one-quarter of that amount in cash.

Upon these facts the county court, at the March Term, 1862, in Washington county, KELLOGG, J., presiding, adjudged the trustee chargeable for fifty dollars and the interest thereon from the time of the execution of the paper above described from Lee to Bacon, to which the trustee excepted.

*Peck & Colby* and *B. F. Fifield*, for the trustee.

*Redfield & Gleason*, for the plaintiffs.

PECK, J. The only questions in this case arise upon the report of the commissioner, as to the liability of the trustee. The commissioner reports the facts, and submits the questions of law to the court.

A question is made whether the written disclosure of the trustee filed in the case is to be regarded as part of the case in connection with the report. Under the present statute the whole case, as to the liability of the trustee, is referred, and the disclosure previously filed is but evidence on the hearing before

the commissioner, and when the commissioner professes to report the facts, and makes no reference to the disclosure, as containing further facts, the court can take no notice of statements in the disclosure not embraced in the report. Such is the present case, and we must look to the report for the facts. This question is, however, of no importance in this case, as we see nothing in the disclosure that would vary the rights of the parties, certainly nothing that puts the legal rights of the trustee in a light more favorable to him than that in which they are presented by the report.

It appears that the alleged trustee, Bacon, was a deputy sheriff, and had in his hands for service a writ of attachment in favor of Lee, the principal debtor, and served it by attaching $600 in bank bills, together with some other property ; that Lee immediately, and before the return day of the writ, settled the suit with the attorneys who commenced it, and that Bacon, being notified of the settlement, paid over · to Lee the bank bills attached except $50, which he retained when this trustee writ was served upon him, and which he still retains. The question is whether Bacon is chargeable as trustee of Lee for that $50.

I. It is insisted that as this money came into the hands of the trustee officially under an attachment, it is in the custody of the law, and not subject to attachment by trustee process, even after the first attachment is dissolved. Had this been personal property other than money, no one would doubt but it would have been liable to be attached by an ordinary writ of attachment. This being so, it is difficult to see why this fund may not be held by trustee process, which is but another mode of attaching the debtor's property. By the settlement of that suit the lien of that creditor was gone, and the right of the debtor to the property became absolute, both as to title and possession.

It is settled in this state that a deputy sheriff who has money in his hands which he has collected on an execution may be held as the trustee of the execution creditor. This was decided in *Hurlbut* v. *Hicks and Trustee*, 17 Vt. 193 ; and in *Bullard* v. *Hicks and Trustee*, 17 Vt. 198. On the same principle such officer must be liable as trustee of the execution debtor for a

surplus in his hands belonging to the debtor, realized on the sale of the property of such debtor, and which it is his duty to pay over to the debtor. If such funds are not so far in the custody of the law as to be exempt from trustee process, it is very clear that money of the debtor attached on mesne process is not for this reason exempt, after that attachment is dissolved by settlement of the suit, and notice given to the attaching officer.

II. It is also objected by the counsel for the trustee, that Lee's remedy against Bacon for the money is founded on a trespass or tort, and that therefore Bacon can not be held as trustee. It is claimed to be a tort on the ground that bank bills are not attachable on a writ of attachment, and that for this reason Bacon was guilty of a trespass when he attached the bills. The statute provides that goods, chattels and estate may be attached on a writ of attachment. Goods and chattels in a strict technical sense may not include money or bank bills; yet in a statute, will, contract, or other instrument, the words goods and chattels are construed to include money and bank bills, if such appears to be the intent. There are many instances where these words have been so construed. This question was discussed in *Prentiss* v. *Bliss*, 4 Vt. 513, where the officer collected an execution in bills of the bank of Burlington, and in a suit in favor of the execution creditor for not paying over the money, the officer set up in defence that the bank bills were attached on a writ of attachment against the execution creditor in a suit still pending. This case arose when we had no special provision in the statute on the subject, and yet it is evident from the language of the court, that, had it been necessary to decide the point, the court were prepared to hold that bank bills were attachable, and might be levied upon by execution. The court turned the case on the point that the identical bills collected by the officer on the execution did not become the property of the execution creditor till paid to him by the officer, and therefore while thus in the hands of the officer they were not attachable as the property of such creditor. The statute now provides for levying an execution on current coin and bank bills. But it is claimed that, as the statute is silent on the subject of such attachment on a writ,

Lovejoy et al. *v.* Lee and Trustee.

bank bills are not attachable on *mesne* process. We think coin and bank bills would be attachable and subject to levy of execution, in the absence of any special statutory provision on the subject, other than the general provision in relation to goods and chattels. It is true the statute provides for the levy of execution on coin and bank bills, and does not in terms provide for attaching them on *mesne* process. As a general rule, whatever may be taken in execution is subject to attachment on *mesne* process, and we do not think the legislature intended to make an exception in this respect in relation to bank bills and coin. It may be that one object of this provision of the statute was to remove all doubt as to the right to attach and levy upon such property ; but it is ovbious that the principal object of the statute was to prescribe the mode of proceeding when levied upon, as it provides that coin may be paid over to the creditor without the formality of a sale, and so of bank bills, " *if he* (the creditor) will receive them ;" otherwise they shall be sold as " *other chattels,*" thus designating bank bills as chattels. This special provision rather *recognizes,* than *creates* the right to attach and levy on current coin and bank bills. If the statute is construed to subject bank bills to levy of execution, and not to attachment on *mesne process,* the same construction must apply to current coin, which obviously was not the intention.

But it is further insisted that Bacon was a trespasser, for the reason that in making the attachment he took the bills forcibly from the hands of the debtor or his wife, against their will. It is true that personal property usually carried or worn about the person, can not be attached when so worn about the person of the debtor that the officer can not attach it without committing an assault and violating the personal security of the debtor. But it appears that the officer was lawfully in Lee's house, with process against him, for the purpose of making an attachment, and this was known to Lee ; that this money, with a bag of specie, was in a bureau drawer, which was locked ; that Lee and his wife and the officer went to the drawer, and either Lee or his wife, at the request of the officer, unlocked the drawer ; all three scrambled for the contents ; Lee grasped the specie, and his wife seized and held the roll of bills, whereupon the

officer seized the bills and took them from her, Lee attempting to retake them but failed. It is very questionable whether Lee had not gone so far in putting the officer within reach and control of the property as to deprive himself of the right to seize the package of bills while the officer was in the act of taking it into his possession, and thereby to defeat the attachment. If so, the taking of the bills by the officer from the defendant's wife was in the nature of a recapture. In view of this, in connection with the fact that the officer treated it as an attachment, and Lee acquiesced in it as such, we think the officer can not now set up that it was a trespass, in order to shield himself from his liability as trustee.

III. But it is claimed that when Bacon paid over the bank bills to Lee all but the fifty dollars in question, it was agreed between Bacon and Lee that Bacon should have the fifty dollars as·a reward for finding the money, Lee having previous to the attachment pretended to have lost the money, and advertised it as lost, offering a reward to any one who should find it. Bacon never found any money of Lee's, otherwise than as already stated in stating the circumstances of the attachment. Lee having settled the attachment with the creditor, claimed the money attacked, and Bacon refused to deliver it unless Lee would sign the paper attached to the report, and which is relied on as an agreement that Bacon should retain the fifty dollars, for finding the money. At this time there was another officer at the door about to attach, as the parties supposed, the money in Bacon's hands, and in consequence of this and the fact that Bacon would not give up the money on any other terms, Lee signed the paper, and Bacon delivered over to him five hundred and fifty dollars, and retained the other fifty dollars. The plaintiff claims to charge the trustee on the ground that the fifty dollars was left in Bacon's hands to keep it from attachment. The trustee can not be made chargeable upon this ground. Lee's purpose, undoubtedly, in hastening to get the money out of Bacon's hands was to keep it from attachment, but there is no ground to infer that his intent in leaving the fifty dollars in Bacon's hands was fraudulent in fact, or for the purpose of having Bacon hold it in trust for him, to avoid creditors. The commissioner finds no

such fact, and, as urged by the counsel for the trustee, every inference is the other way. The trustee is not liable unless Lee could have collected this fifty dollars, notwithstanding such agreement, for we assume there was such agreement in fact as the trustee claims. This assent, payment, or agreement, whatever it may be called, was not voluntary on the part of Lee, but compulsory. The parties did not stand on equal terms, and this trustee knew at the time that Lee acted not willingly, but by compulsion. To allow a public officer to avail himself of the custody of a debtor's property obtained by virtue of process, and, by his refusal to redeliver it after the lien is discharged, to force the debtor to pay money, or to agree that the officer shall retain a portion of the property as his own, under pretence of a claim on the part of the officer, so manifestly unfounded that it must be regarded as set up in bad faith, and then to protect himself under such agreement, is too manifestly unjust and oppressive to be sanctioned as law.

The principle and spirit of the decisions on the subject of voluntary and compulsory payments fully sustain this conclusion. Many of the cases were recently and critically examined in *Beckwith* v. *Frisbie & Sons*, 32 Vt. 559. In that case, however, the money was paid under protest, but it was a case between private individuals. The law is more strict against oppression by a public officer by means of an advantage obtained in his official capacity.

But it is claimed by the counsel of the trustee that the right to avoid this contract is personal in Lee, and that he only can avoid it. But the fact that Lee has agreed with the plaintiff, in some arrangement in reference to the plaintiff's demand, that the plaintiff should have the benefit of this claim against the trustee, (as is conceded by counsel in explanation of a statement in the report on this subject,) is such an election on the part of Lee to avoid this contract, as obviates this objection, even if otherwise it would prevail.

None of the objections interposed by the trustee can avail him, and the judgment of the county court is affirmed.