Points Decided.

[Filed June 11, 1885.]

# E. J. DAHMS *v.* GEORGE C. SEARS, SHERIFF, ETC.,
## ET AL.

ACTIONS — PARTIES — MISJOINDER — TORT—CONVERSION—VARIANCE.—In an action against several defendants for the tortious taking from the person of the assignor of the plaintiff of a sum of money "unlawfully, and by force, fraud, and violence," and the conversion thereof by the defendants, it appeared that the defendant Sears was the sheriff of Multnomah County, where the plaintiff's assignor, at the time of the alleged unlawful taking, was confined on civil process; that the deputy sheriff, claiming to fear an escape, searched the prisoner, taking from his person the money in controversy, and turning it over to the said sheriff; that shortly thereafter the other defendants severally placed in the sheriff's hands writs of attachment issued in actions brought by them against said prisoner, which the sheriff thereupon levied upon said money.   Afterwards, said prisoner assigned said money and his right of action therefor to the plaintiff.  *Held:* 1. That, conceding the taking by the sheriff to have been tortious, the other defendants would not be liable in the action, unless they were participants in or privy to such unlawful taking from the prisoner; 2. That, their writs of attachment being several, their liability was several, and extended only to the amounts of money they severally received; that the plaintiff, having alleged a joint tort, must prove a joint conversion.

SAME—ASSIGNABILITY OF RIGHT OF ACTION.—Any claim arising out of tort which affects the estate of a person may be assigned, though the rule is otherwise when it arises out of an injury to the person.

REASONABLE SEARCH AND SEIZURE—CUSTODY OF THE LAW—LIABILITY TO ATTACHMENT.—It seems that the security of the public may justify the searching of a prisoner confined upon civil process, and the taking from him of any property in his possession that would aid him in making his escape.   Such act would probably be regarded as a reasonable seizure. But money taken from a prisoner under such circumstances is in the custody of the law, and not the subject of levy under attachment or execution.

ATTORNEY—ASSIGNMENT TO — CHAMPERTY.—An assignment to an attorney of a right of action for the express purpose of enabling him to bring action upon it, under a stipulation that he and his law partner were to have more than two thirds of it for their services therein, is champertous and void.  *Per* THAYER, J.

SAME.—The law of champerty and maintenance, as it existed in England, has doubtless been modified to suit the varied conditions of the people of this country, but the principles upon which it was founded still exist, and if the evils revive in any form, will be present to counteract their

pernicious effects. An attorney, under our system, has a right to con-
tract for a contingent fee, or for a percentage upon the amount recovered,
but cannot lawfully purchase a claim for the consideration that he will
prosecute it in his own name for a part of the amount recovered.

MULTNOMAH COUNTY. Defendants appeal. Reversed,
and new trial ordered.

*Joseph Simon,* for Appellants.

*George W. Yocum* and *F. V. Drake,* for Respondent.

THAYER, J. This appeal is from a judgment of the
Circuit Court for Multnomah County. The respondent
commenced an action at law in that court against the
appellants and A. W. Witherell, and alleged in his com-
plaint, in substance, that on or about the twenty-third
day of October, 1883, one Fred Kittener was the owner
and lawfully possessed of about $830, in national bank
bills of the national currency of the United States, of the
value of $830, and that at said time the defendants in said
action, by force, fraud, and violence, unlawfully took said
$830 from the person of the said Kittener, and converted
and disposed of the same to their own use and benefit,
against the will and consent of the said Kittener, to his
damage, and to the damage of the plaintiff, said respond-
ent, in the sum of $830. That on or about the eighth
day of February, 1884, the said Fred Kittener, in writ-
ing, for a good and sufficient consideration, sold, assigned,
and transferred to the plaintiff the said $830, and all his
right and title therein, and his right of action against
the said defendants therefor. The said defendants filed
an answer to the said complaint, in which they denied
specifically all the allegations therein contained, and for
a further and separate defense, alleged, in substance, that
the defendant Sears was and had been, since and prior to
the twenty-third day of October, 1883, the sheriff of said

county of Multnomah; that on said twenty-third day of October, 1883, the defendants, Thompson, De Hart, and Honeyman, partners, under the firm name of Thompson, De Hart, & Co., commenced an action in the said Circuit Court against W. H. Carson and said Kittener, partners, by the firm name of Carson & Kittener, to recover the sum of $567.20, alleged to be due and owing from said Carson & Kittener to said firm of Thompson, De Hart, & Co.; that they filed the requisite papers for an attachment, and that a writ of attachment was duly issued by the clerk of said Circuit Court for said county of Multnomah, on said twenty-third day of October, 1883, directed to said Sears as such sheriff, and which was thereupon duly delivered to him for service, and that upon the same day the said sheriff, by virtue thereof, duly levied upon and took into his possession the sum of $721 in money belonging to said Kittener, and that on the twenty-fourth day of October, 1883, the firm of Hodge, Davis, & Co. commenced an action in the Justice's Court for Morrison Precinct, in said county, against said firm of Carson & Kittener, to recover the sum of $34.92, alleged to be due from the latter to the former, and that said firm of Hodge, Davis, & Co. sued out an attachment from said Justice's Court, which was also duly issued to said Sears as such sheriff, and upon the same day delivered to him, and that by virtue thereof said Sears levied upon the said sum of $721 in money belonging to said Kittener; that such proceedings were thereafter had in said respective actions that on the thirtieth day of November, 1883, a judgment was obtained by said Thompson, De Hart, & Co. in their action against said Carson & Kittener in said Circuit Court for the said sum of $567.20, and costs, and that an order therein was made by the said court adjudging and directing the moneys attached in said action to be applied

upon the execution issued thereon, and that on said thirtieth day of November, 1883, a writ of execution was duly issued thereon, and that the sum of $616.23 of said money so attached was so applied by virtue of the said proceedings, which sum included said judgment, costs, and interest. That on the thirty-first day of October, 1883, said Hodge, Davis, & Co. recovered a judgment against said Carson & Kittener, in said Justice's Court, for the amount of their claim, and similar proceedings were thereupon had, and the further sum of $44.77 of said money, being the amount of said judgment and costs, was applied upon their execution. The said defendants also alleged that on the twenty-fourth day of October, 1883, the said Kittener applied, upon affidavits, to the judge of said Circuit Court for an order requiring said George C. Sears to return to him, said Kittener, all of said moneys so levied upon and attached by him, and that thereafter, on the —— day of October, 1883, an order was made by said court in said action requiring said Sears to return to said Kittener, of said sum so levied upon and attached by him, the sum of sixty dollars, which was duly paid over in accordance therewith.

Said defendants further alleged in said answer that said levy upon said money by the said Sears, as sheriff, under and by virtue of the said attachments and writs of execution, was the same taking of said money mentioned and complained of in said complaint. The plaintiff filed a reply to the new matter of defense set forth in said answer denying the same. The issues so formed were tried by the said circuit court and a jury duly impaneled to try the same, and the said jury returned a verdict in favor of the plaintiff, but in the following form: "E. J. Dahms, plaintiff, v. George C. Sears, A. W. Witherell, Hodge, Davis, & Co., and Thompson,

De Hart, & Co., defendants: We, the jury in the above-entitled action, find for the plaintiff against George C. Sears and the other defendants mentioned in the complaint, namely, Thompson, De Hart, & Co. and Hodge, Davis, & Co., and we assess the plaintiff's damages against said defendants in the sum of $661;" upon which verdict the said court entered judgment in favor of the plaintiff and against the defendants Sears, Thompson, De Hart, and Honeyman, for the amount of the verdict, and from which judgment the appeal herein is taken. The appellants have assigned a number of errors, all of which are claimed to have been committed at the trial, excepting the entry of the judgment upon the verdict in the manner above referred to. It appears from the bill of exceptions that to maintain the plaintiff's issues, proof was introduced tending to show that said Fred Kittener, on the twenty-third day of October, 1883, was confined in the county jail of Multnomah County upon civil process; that he had in his possession the currency mentioned in the complaint, and that the jailer and Witherell, who was deputy sheriff, conceiving or pretending to think that his actions were peculiar, and that he might have something on his person that would enable him to make his escape, searched him, and found upon his person the said currency, and took it from him, and delivered it over to Sheriff Sears. It was further proved, upon the part of the plaintiff, that he and said Kittener each signed a writing dated February 7, 1884, by the terms of which Kittener sold and assigned to the plaintiff his right, title, and interest in the said national currency, claimed to amount to $830, described as having been, on the twenty-third day of October, 1883, taken from him by force, fraud, and violence by said Sears, Witherell, Thompson, De Hart, and Honeyman. In consideration of which sale and assignment, the plaintiff

stipulated in said writing to bring action against said Sears and the other parties for the recovery of the currency or its equivalent, and to collect and receive the same in trust for the said Kittener, and dispose of it as follows: To pay Coy & Dahms, attorneys, the sum of $468, and Yocum & Clarno, attorneys, the sum of $100; said sums were stated to be for fees for legal services rendered, or about to be rendered; to Henry Rinehart, $50; to Charles Ihring, $142; to O. Brachth, $40; to Jacob Reinhart, $30; and it was therein further stated that said above-named persons were lawful creditors of said Kittener; which agreement, on his part, the said plaintiff promised to perform and fully execute within one year from date, or as soon thereafter as the nature of the case would admit, without unnecessary delay. This paper, which is termed in the case an assignment of the currency and cause of action, was offered in evidence, to the introduction of which the defendant's counsel objected, upon the grounds that it was immaterial and incompetent. The objection was overruled, and the defendants excepted.

The plaintiff, to further maintain his issues, gave in evidence the original writ of attachment issued in the action of Thompson, De Hart, & Co. against Carson & Kittener, and also the writ of attachment in the case of Hodge, Davis, & Co. against Carson & Kittener, copies of which writs are set out in the bill of exceptions. The defendants then attempted to maintain their defense by giving evidence tending to prove the circumstances under which the currency was taken from the said Kittener, and that the said jailer and Witherell acted in good faith in taking the money from him, and they showed that the amount thereof was only $721, and that thirty dollars thereof belonged to Weinhardt, which Kittener had in his possession for the purpose of delivering to Weinhardt.

The defendant also offered in evidence the proceedings in the actions against Carson & Kittener set forth in their answer, including the judgments therein rendered, the order directing that said funds be applied in payment and satisfaction thereof, and the execution issued upon said judgments respectively, and of the application of the said currency to the satisfaction of said judgments, also the adjudication had before the said circuit court upon the application of the said Kittener, made upon the affidavits for an order requiring the said Sheriff Sears to return him the said currency levied upon and attached, which matters were all excluded by the court as immaterial and incompetent, and the defendants excepted to the ruling thereon.  The defendants, in order to show that said Kittener had already disposed of the said claim when he executed the writing between him and the plaintiff, offered in evidence an order signed by said Kittener, addressed to said Sears, of which the following is a copy:

"PORTLAND, OR., October 23, 1883.

"To the sheriff of Multnomah County, George C. Sears, and Edward Dougherty, jailer, Multnomah County: Please pay to Mr. J. A. Campbell, my attorney, all the money, and checks, and the other property you took from me.                                FRED KITTENER."

To the introduction of which the plaintiff objected, and the court sustained the objection and allowed an exception to the ruling.  The defendants offered to show that said order was presented to the drawee, but the court overruled it, and an exception was duly taken to the ruling thereon.

The court instructed the jury, in substance, that, as the evidence then stood, the plaintiff was entitled to recover, and the only question was, who he was entitled to recover from; that whether the money was taken rightfully or wrongfully from Kittener, it would not be subject to be

levied upon by the attachments while in the sheriff's hands. If the sheriff took it rightfully, he took it under the law, and it was in the custody of the law; that he was bound to keep it there, and deliver it back to Kittener when released from confinement; that if the money was taken rightfully and in good faith, for the protection of Kittener while in jail, then the deputy sheriff Witherell would not be liable; that if the jury found that after the money was in the sheriff's hands, Hodge, Davis, & Co. and Thompson, De Hart, & Co. received the money from the sheriff, knowing how it was in his hands, knowing that it was taken from Kittener's person, as it was taken, it was in his hands not subject to attachment. If they took it knowing the sheriff had no right to levy upon it, then they would be liable; that if the money was taken rightfully, the plaintiff could not recover from Witherell, nor any one but the sheriff, unless the other parties knew before they received the money how the sheriff held it—knew that he held it by having taken it from Kittener without authority while he was in jail; that the jury might return a general verdict against each of the defendants, under the instructions given, as the plaintiff was entitled to recover against either the sheriff alone, or against all of the defendants, or against such of them as the plaintiff was entitled, under the instructions of the court; that he was entitled to recover against some of them, and against the sheriff in any event; that the only question was against whom, and that they should find for the plaintiff in any event; that if the jury should find that Thompson, De Hart, & Co. knew before they received the money whether it was wrongfully or rightfully taken, that it had been taken under the circumstances of its taking, and levied upon while in the hands of the sheriff, then Thompson, De Hart, & Co. were liable to the action. These several instructions were duly ex-

'cepted to by the defendants' counsel. Said counsel requested the court, in substance, to charge the jury that if the money taken from the possession of Kittener on the said twenty-third day of October, 1883, was taken in good faith for the security and safe-keeping of his prisoner, and a writ of attachment afterwards came into the hands of the sheriff without his procurement or connivance, he would have the right to apply the money upon :such writ of attachment. The court refused to so instruct, and an exception was duly taken thereto. Said counsel also requested the court to instruct the jury that the plaintiff was not entitled to recover in the action without showing that he notified the defendants, or some of them, before the commencement of the action; that he was the owner by assignment of the cause of action sued on and a demand for the money sued for, which instruction the court refused to give, and to which the said counsel excepted. The main point in the case, as the court below seems to have viewed it, was whether the funds taken from Kittener were subject to be levied upon by attachment while in the hands of the sheriff. That question was the principal one contended for before the court.

The appellant's counsel insisted that it was only be-'cause the property was on the person of the debtor that prevents it being attached on any writ; that it is a right 'or privilege that attaches to the person of the debtor, and not to property, and as soon as the property was separated from the person of the debtor in any legal way, 'either by his own act or the act of another, the exemption ceased, and the property might be attached like any other property. In support of that view, said counsel 'cited the following list of authorities: *Clossen* v. *Morrison*, 47 N. H. 486; *Lovejoy* v. *Lee*, 35 Vt. 430; *Burleson* v. *Milan*, 56 Miss. 399; *Green* v. *Palmer*, 15 Cal. 411; *State* v. *Dillard*, 38 Am. Dec. 208; *Prentiss* v. *Bliss*, 4 Vt. 513;

S. C., 24 Am. Dec. 631; Drake on Attachment, sec. 244;
Waples on Attachment, 221, 597, 600; Freeman on Exe-
cutions, sec. 130. The respondent's counsel contended
that whether the money, was taken from Kittener to
enable the sheriff to levy upon it, or was taken from him
to secure his safe-keeping, it was not subject to attach-
ment; that in either case the money was in the custody
of the law, and in support of that position cited the fol-
lowing authorities: Code, p. 174, sec. 311; *Robinson* v.
*Howard,* 7 Cush. 257; *Morris* v. *Penniman,* 14 Gray, 220;
Drake on Attachment, secs. 503–505; *Clymer* v. *Willis,*
3 Cal. 364; *Wilder* v. *Bailey,* 3 Mass. 289; *Pollard* v. *Ross,*
5 Id. 319; *Com. Ex. Bk.* v. *McLeod,* 19 N. W. Rep. 329;
22 Id. 919; *Palmer* v. *Leonard,* 9 Iowa, 140; *Isley* v. *Nich-
ols,* 12 Pick. 270; *Hunt* v. *Stephens,* 3 Ired. 365. I am of
the opinion that property taken from a prisoner under
such circumstances is not the subject of attachment or
levy, by virtue of an execution. The security of the pub-
lic may justify the searching of a prisoner confined in
prison upon criminal or even civil process, and the tak-
ing from him of any property in his possession that
would aid him to make an escape. It would probably
be regarded under such circumstances as a reasonable
search and seizure; but to allow private parties to take
advantage of the circumstances in order that they may
secure a personal benefit would be a violation of that
faith which the commonwealth owes to persons held in
custody under its authority and laws. It would lead to
oppression and abuse. The object and purpose of an
arrest under civil and criminal process would be per-
verted, and schemes and devices be resorted to by impor-
tunate creditors to enforce a payment of their demands
that would outrage justice and the right to personal secu-
rity. The case under consideration is not free from sus-
picion that unscrupulous measures were employed for

the purpose indicated.  The attachment of the money taken from the person of Kittener followed in very quick succession its seizure, and gives rise to the inference that collusion existed between the officers of the prison and the representatives of the creditors.  One of the attachments was levied upon the money the same day it was taken from Kittener.  The circumstance tends either to corroborate the surmise suggested, or establish a somewhat remarkable coincidence.  Kittener, however, is entitled to no favor or sympathy.  He was evidently endeavoring to avoid the payment of honest obligations when he had ample means with which to discharge them. Still he was entitled to the benefit of the law established to protect the sacredness of the person, and if he had brought the case in court in his own name, he would have had reasonable grounds for a recovery.  But the attempted assignment of the claim to the respondent in the manner described, and the latter being plaintiff, introduced another feature in the case which I think very seriously affected the right of action.  I am very much inclined to the opinion that the paper executed by Kittener and the respondent, whereby the former assigned the claim to the latter in consideration that he would bring action to recover the property or its equivalent, is void.  The respondent is an attorney at law, and he bought the claim for the express purpose of collecting it by action, under a stipulation that he and his law partner were to have more than two thirds of it for legal services "rendered or about to be rendered."  It was a clear case of an attempt by an attorney to purchase a claim to answer a private end; and if there are any vestiges of the common-law doctrine of champerty in force in this state, the affair was a nullity.  That such a claim is assignable although arising out of tort, and that the assignee may maintain an action upon it in his own name, seems to be settled

by authority. (Pomeroy's Rem., sec. 147.) Any claim which affects the estate of the party may be assigned, but the rule is otherwise where it arises out of an injury to the person, such as slander, assault and battery, and kindred cases. To allow an attorney of the court, however, to purchase a chose in action in consideration that he will bring suit to collect it, with a stipulated right to retain the lion's share, would shock the moral sense of all right-minded people. I do not think that a case can be found where such an assignment has been upheld. In *Arden* v. *Patterson*, 5 Johns. Ch. 48, a somewhat similar case to this, Chancellor Kent makes use of this language: "The purchase of a law case like this is champerty in its most odious form, and it ought equally to be condemned on principles of public policy. It would lead to fraud, oppression, and corruption. As a sworn minister of the courts of justice, the attorney ought not to be permitted to avail himself of the knowledge he acquires in his professional character to speculate in lawsuits. The precedent would tend to corrupt the profession and produce lasting mischief to the community." In *Key* v. *Vattier*, 1 Ohio, 132, it was held that a contract with an attorney that he should prosecute suits for the recovery of property, and that no compromise should be made except he joined in it, and to receive a part of the property recovered as a compensation, was illegal and void. That case was very similar in principle to this, and the decision was made under a very similar condition of affairs. Judge Burnet, who delivered the opinion of the court, said: "Champerty is a bargain with a plaintiff or defendant to have part of the land or other thing sued for, if the party that undertakes it prevails therein, whereupon the champertor is to carry on the party's suit at his own expense. . . . . The contract in this case shows that the plaintiff was to intermeddle in the suits

of Vattier by assisting him with his services, and by the
payment of costs, which comes most unquestionably
within the definition of maintenance.   In addition to
this, the plaintiff and his partner, in consideration of
that intermeddling, are to receive a moiety of the land,
or whatever else may be recovered.   These facts most
unequivocally constitute the offense of champerty.   The
next inquiry is, Can this action be sustained?   In this
state we have no general statute prohibiting or punish-
ing champerty, and the common law in relation to the
punishment of crimes and misdemeanors is not in force.
But although this be the case, it by no means follows that
they may be lawfully and innocently practiced, or that
the aid of the state tribunals may be had to sanction and
enforce them.   The contract between these parties is
against public justice, and such engagements have always
been considered as injurious to the peace and happiness
of the community. . . . . Contracts like the one before
us are said to be the most odious species of maintenance.
Should they be sustained they will probably become
frequent; the prospect of obtaining a large amount as a
consideration for professional services, and the risk of an
inconsiderable bill of costs, form a strong temptation to
speculate in lawsuits. . . . . Such practices are oppress-
ive on the parties immediately concerned; they have an
injurious effect on the community at large; they are
against the policy of the law, and ought to be suppressed."
In *Weakly* v. *Hall,* 13 Ohio, 175, the court said: "Champerty
is an agreement to prosecute at one's own risk and ex-
pense, and take part of the thing received in compensa-
tion. . . . . In some of the states they have statutes
passed to prevent it, in others not; but where no statute
regulation exists, the common law is universally holden
to prevail as imported by our ancestors, and applicable
to our local circumstances."   In *Backus* v. *Byron,* 4 Mich.

535, it was held that an agreement made between attorney and client, that the former should prosecute an ejectment suit for an interest which the latter claimed in the property, the client to advance the expenses of the suit, and the attorney in case of failure to have nothing for his services but on recovery of a part of the property or its value in money, was void for champerty. Judge Green, in that case, says (p. 553): "It is said that the doctrine of champerty has never been recognized by the courts of this state, and it has been supposed that the general opinion of the profession has been that it was not in force here. Upon what authority these assumptions are based does not appear. Whatever may have been the opinion in some localities, we believe that the general opinion of the profession throughout the state has been otherwise, and we are not aware of a case before the present in which a court of this state has held a contrary doctrine." In *Scobey* v. *Ross*, 13 Ind. 117, it was held that an agreement by which an attorney was to receive for his services in recovering a claim a part of the claim or thing to be recovered was champertous and void. The court in that case also held that the law upon the subject was in force by virtue of the common law and English statutes which had been in force since the year 1818.

In *Martin* v. *Clark*, 8 R. I. 389, the court held that champerty was an offense against the law, whether regard be had to the ancient common law, the English statutes upon the subject, or to the legislative acts of that state; and that a contract between an attorney and counselor at law and a client, that the former should prosecute a claim at his own cost and charge, for a part of the subject in litigation, was champertous, illegal, and void. In *Duke* v. *Harper*, 66 Mo. 51, it was held that champertous contracts in that state were void, but that a contract

between attorney and client was not champertous be-
cause the former agreed to receive as a compensation for
his services a portion of the property in controversy
unless he agreed to pay some portion of the costs and
expenses of the litigation. The court, in that case, in
discoursing upon the question as to whether the law
upon the subject of champerty was applicable to the con-
dition of the people of that state, said: "But there is
nothing in the law of champerty, as expounded by
Blackstone and Bouvier, and the American courts in the
adjudicated cases which we have cited, that is not appli-
cable to our condition. The race of intermeddlers and
busybodies is not extinct. It was never confined to
Great Britain, and the little band of refugees who landed
from the Mayflower on the coast of New England were
not entirely free from the vice of intermeddling in the
concerns of other people. It is as prevalent a vice in the
United States as it ever was in England, and we do not
see but that a law restraining intermeddlers from stir-
ring up strife and litigation betwixt their neighbors is
wholesome and necessary even in Missouri. A man
having a doubtful claim to property in the possession of
another, who would hesitate to incur the expense of test-
ing its validity, will readily agree that one who will bear
the burden of the contest may institute a suit in his own
name. Such contracts are champertous, and should be
so held on principle everywhere." These several authori-
ties, and a large number of others therein cited, show
that the law concerning champerty is still recognized as
a part of the municipal law of a number of the states of
the Union. Many other of the states, however, do not
include it in their municipal codes. New York has long
had upon her statute-books acts which cover some of its
provisions, and it is now claimed in the later adjudica-
tions of that state that no other law upon the subject is

in force there. (*Sedgwick* v. *Stanton,* 14 N. Y. 289.) It is undoubtedly true that champerty and maintenance, as they existed at the common law, and under a series of ancient statutes, like many of the other branches of the municipal law of England, have undergone great changes. They have been modified to suit the varied conditions of the people who adopted that system. That is entirely consistent with the philosophy upon which it was founded. Every rule it recognized and enforced was based upon a reason, and when that ceased, the rule itself ceased. The various regulations which made up the body of the common law were established to prevent some prevalent mischief, and when that end was accomplished, the law was fulfilled; but as long as the mischief continued, the remedy remained to check and control it. Many of the evils which the law was intended to remedy have been overcome by countervailing circumstances that have arisen, and in effect have been extinguished. So far, then, the law becomes obsolete; but it is not dead. It has a spirit or principle which is endowed with immortality, and if the evils revive in any form, it would be present to counteract their pernicious effects.

Many salutary principles of the law originated in feudal times, and grew out of feudal customs, and still flourish, although the subjects they were intended to regulate have been long since swept away. So with the law against champerty. Its framework is broken down and decayed, but the principle which condemned the buying of a lawsuit in order to secure its fruits will endure as long as the desire to promote good order and insure justice controls the actions of mankind. An attorney, under our system, has a right to contract for a contingent fee, or for a percentage upon the amount recovered, but he cannot lawfully purchase a claim for the consideration that he will prosecute it in his own name for

a part of the amount recovered.   He has no right to become attorney and client at the same time.   The courts, will not aid him to carry out any such questionable· scheme or recognize the legitimacy of the attempted speculation.   The assignment of the claim in question from Kittener to the respondent for the purposes disclosed on the face of the instrument was invalid, and he· failed to establish a cause of action.   There are many other questions in the case which we have considered, but it is only necessary to notice them briefly.   I think the court improperly excluded the appellants' proof of˙ the proceedings and judgments in the two cases mentioned in their answer.   The court probably concluded that the appellants had shown by their testimony that. the funds taken by Kittener were not subject to be attached under the appellants' several writs; but they had the right to controvert the allegations of the complaint,. that they and the sheriff Sears, by force, fraud, and violence, unlawfully took the funds from Kittener.   They had the right to show that their taking was not from Kittener, and that their acts in the premises were under legal proceedings, and upon another·occasion.   The defendants in the action were charged with a joint tort,. and the plaintiff, in order to maintain it, was-compelled. to prove a joint conversion.   (1 Chit. Pl. 86.)   I do not think the order entered by the court directing that the· said money be applied upon the executions, or that the· order made upon the application of Kittener, that Sears be required to return him the money, constituted any defense, if the view is correct that the money was not subject to attachment.   If the levy upon it under the attachment were tortious, the subsequent acts of appellants and the court did not make it right.   The introduction of the proceedings and judgments in proof, before referred to, should not have been allowed upon that.

ground; they were admissible only to show what the attaching creditors did do in fact, and that their acts were distinct from that of taking the money from the person of Kittener. Their liability was several, and extended only to the amount of the money they respectively received, unless the evidence showed that they participated in the original taking, and that it was wrongful. The order made by Kittener in favor of Campbell, requesting the sheriff to pay to Campbell all the money, etc., was not relevant testimony, whatever effect is to be attached to it.

The appellants could not prove that Kittener had assigned the claim to Campbell, as they had not pleaded it. They had a right to introduce any proof showing that Kittener never had any claim; but this proof was an avoidance; it was a concession that he had a claim, but that he subsequently disposed of it. All such matters have to be pleaded, as necessarily as a payment has to be pleaded. Nor was the order alone proof of an assignment of the claim to Campbell. Had Kittener agreed, upon a sufficient consideration, to sell the claim to Campbell, and thereupon drawn the order, it would have been proof of an assignment; but standing by itself, I hardly think it sufficient. The instructions of the court to the jury, under the view taken by the court, were mainly correct; but so much importance was attached to the fact that the money taken from Kittener was in the custody of the law, and therefore not subject to levy, that the other questions considered herein were overlooked, that the facts did not give the respondent a right of action, and that he had to establish his ownership of the claim, and the joint conversion of the money by the appellants, before the court could properly instruct that he was entitled to recover. I think a jury has a right, in cases of tort, where there are several defendants, to

find a verdict against a part of them and in favor of the others. The older authorities sustain that view, and the law has not been changed by the code practice, as I have been able to discover. (*Lansing* v. *Montgomery,* 2 Johns. 382; *Jackson* v. *Wood,* 5 Id. 280; Ch. Pl. 86.) This, however, does not allow a joint action against defendants for several trespasses. In an action of that character, the plaintiff must elect at the trial as to which of the defendants he will proceed against. If he fail to do that, and submit the case to the jury, he will be entitled to no verdict. It was necessary for the plaintiff, before bringing the action herein, to demand the money sued for, unless he could show that the taking had been tortious. In that case, it would not be necessary to make a demand, although the defendants had no notice of the assignment, the right being, as before suggested, assignable. The judgment as against Honeyman is erroneous, irrespective of the other questions. The jury found no verdict against him any more than they did against Witherell; and the court could as properly have rendered the judgment against the latter as the former. For the reasons above expressed, the judgment must be reversed, and the case remanded to the court below for a new trial.

LORD, J. I concur in the view that the plaintiff, having alleged a joint tort, must prove a joint conversion. As to the other point, deeming it unnecessary to the decision of the case, I express no opinion.

WALDO, C. J., concurred with Judge LORD.