STRAWBRIDGE *v.* STERN.[1]

TROVER—JOINDER OF PARTIES.

> Two or more persons cannot properly be joined as defendants
> in an action of trover, where distinct acts of conversion
> are relied upon, in which they were not jointly concerned.

Error to Kalamazoo; Buck, J.    Submitted January 13,
1897.    Decided March 10, 1897.

Trover by Justice Strawbridge and Isaac Clothier, co-
partners, against Henry Stern and Jacob Levy, impleaded
with Charles Livingston and Nathan Block, copartners.
From a judgment for defendants Stern and Levy on
verdict directed by the court, plaintiffs bring error.
Affirmed.

*Osborn, Mills & Master,* for appellants.

*Howard & Roos* (*Boudeman & Adams,* of counsel),
for appellees.

MONTGOMERY, J.    Plaintiffs filed a declaration against
the defendants, containing two counts, the first charging
a conspiracy to defraud against the four parties jointly,
the second being an ordinary count in trover, the property
mentioned in each count being the same, and consisting
of dry goods sold by the plaintiffs to the defendants
Livingston & Block.    On the trial of the case the plain-
tiffs' attorney announced that no recovery would be
sought under the first count in the declaration.    The
record also shows that there was no evidence in the case
that Stern or Levy conspired with the other defendants
to cheat and defraud the plaintiffs.    The questions to be
determined, therefore, arose under the count in trover.

---

[1] Rehearing denied June 18, 1897.

The plaintiffs offered testimony which tended to show that the defendants Livingston & Block bought the goods in question of the plaintiffs, fraudulently, and not intending to pay for them. It further appeared in the case that defendant Levy was a creditor of Livingston & Block, and that, shortly after the purchase by Livingston & Block from plaintiffs, he bought a portion of the goods in question from them, and that the consideration paid was the cancellation of the indebtedness, and the delivery of the notes of Livingston & Block evidencing such indebtedness, and his own promissory note for $166.35, which was subsequently transferred, before due, to one Meyer Desenberg, to apply on an indebtedness of Livingston & Block to him. The record also shows that it was shown on the part of defendant Levy, by testimony not contradicted by any testimony on the part of plaintiffs, that when he loaned the money to Livingston & Block he was promised that he should be repaid when the notes came due; that when the notes came due he demanded payment, but Livingston & Block, not having the money with which to pay, offered to turn out goods in payment of said indebtedness, which he agreed to and did accept; that he (Levy), being in the same business, could use the goods in his business; that, when he accepted the goods in payment of his notes, he had no knowledge of any fraud, or claimed fraud, on the part of Livingston & Block, or of any of the facts which plaintiffs claimed tended to show fraud on their part; and he had no knowledge that the goods so sold to him by Livingston & Block had not been paid for by them.

The evidence as to defendant Stern was that, some days after the sale to Levy, a chattel mortgage of the stock in question was made by Livingston & Block to Stern as trustee, to secure three creditors, namely, Aaron Livingston, Daniel Goldstein, and R. Livingston. It appeared that, prior to the giving of the mortgage, Livingston & Block had shipped to Aaron Livingston, in the name of a fictitious consignor, goods to the amount of nearly two-

thirds the amount of his claim. They had shipped to
R. Livingston, also in the name of a fictitious consignor,
goods covering more than one-half the value of his claim,
and in a similar manner had shipped to Daniel Goldstein
goods covering two-thirds in value of his claim. But
the mortgage was executed purporting to secure the full
amount of the original claims of each of these creditors.
It does not appear that Stern had any knowledge that
these goods had been shipped to these creditors. He took
possession under his mortgage; and plaintiffs' testimony
further shows that plaintiffs discovered some of the goods
which had been fraudulently obtained from them by de-
fendants Livingston & Block in Stern's possession, and
demanded possession of the same, which was refused; and
that the plaintiffs also discovered some of the goods
obtained from them by Livingston & Block in the posses-
sion of Levy, and demanded them of him, which demand
was refused.

It will be seen that two distinct conversions must have
taken place, according to plaintiffs' theory. The conver-
sion of the goods transferred to Levy was one in which
the defendant Henry Stern was in no way concerned, and
it is equally true that Levy was in no way concerned in
the conversion of the goods transferred to Stern by Liv-
ingston & Block. At the conclusion of the plaintiffs'
case, the defendants' counsel asked the court to hold that
there could be no joint judgment against the defendants
Stern and Levy, and that the plaintiffs be required to elect
as to which defendants they would proceed against. This
request was refused, but at the conclusion of the testi-
mony the circuit judge directed a verdict in favor of the
defendant Levy, on the ground that the undisputed evi-
dence in the case showed him to be a good-faith purchaser,
without notice of any infirmity in the title of Livingston
& Block; and also held, as matter of law, that, under the
proofs in the case, Stern could not be joined with the other
defendants; and, the plaintiffs having been required to
elect to proceed against the defendants Livingston &

Block or Henry Stern separately, and having refused so to do, the court directed a verdict in favor of defendant Stern. The case then went to the jury, and the plaintiffs recovered against the defendants Livingston & Block.

The case is brought here, and error is assigned upon the rulings by which plaintiffs were prevented from recovering against Stern and Levy. The plaintiffs invoke the familiar rule that, if defendants might be held jointly liable, the law will not apportion their responsibility, and that all who are concerned in a single trespass or wrong may be held jointly liable. Numerous cases are cited to sustain this proposition, of which cases *Lincoln* v. *Claflin*, 7 Wall. 132, is an illustration. But the cases permitting joinder of defendants are limited by the rule that such a joint action cannot be maintained against different defendants, where separate and distinct trespasses are relied upon, in which the parties are not jointly concerned. See 1 Chit. Pl. 86. In *Dahms* v. *Sears*, 13 Or. 47, 65, it is said: "In an action of that character, the plaintiff must elect at the trial as to which of the defendants he will proceed against. If he fail to do that, and submit the case to the jury, he will be entitled to no verdict." It is quite probable that, had the plaintiffs elected to proceed against the defendants Livingston & Block and Stern, they would have been entitled to have considered as much of their demand as arose out of the alleged conversion of the goods which came into the hands of Stern. But the plaintiffs did not, and refused to, take this course. They insisted upon proceeding to the jury upon a claim for the entire of the goods purchased by Livingston & Block. Not only this, but they continued their case as against Levy, and are here insisting that error was committed in his favor and to the plaintiffs' prejudice. Upon the issue which the plaintiffs thus presented to the jury, a verdict in favor of the defendants Stern and Levy might properly have been directed, upon the ground that they were improperly joined, as their several acts, complained of by plaintiffs,

were wholly disconnected. We think the plaintiffs are not in position to complain of the rulings on the trial. See, further, *Hines* v. *Jarrett*, 26 S. C. 480; *Dyer* v. *Hutchins*, 87 Tenn. 198; *Cogswell* v. *Murphy*, 46 Iowa, 44; *Cooper* v. *Blair*, 14 Or. 255; *Larkins* v. *Eckwurzel*, 42 Ala. 322 (94 Am. Dec. 651).

The judgment will be affirmed.

The other Justices concurred.