## WIENSKAWSKI *v.* WISNER.

ACTIONS—JOINT TRESPASSERS.

A joint action may be brought by the owner of a stock of goods against a constable who levied an execution upon the stock, another constable who aided in the levy and subsequently took possession of the exemptions under a chattel-mortgage lease assigned to the execution creditor, and the attorney to whom the conduct of the whole business was intrusted by the latter, where, by their concerted action, the sale under execution was made before the hour advertised, and the exemptions were disposed of after the lien of the mortgage had been discharged by tender to each of the amount due under the lease.

Error to Kent; Grove, J. Submitted June 11, 1897. Decided September 14, 1897.

Trover by William Wienskawski against Thompson D. Wisner, John H. Payne, and Michael F. Griffin. From a judgment for plaintiff, defendants bring error. Affirmed.

*Lombard & Hughes*, for appellants.

*McKnight & McAllister*, for appellee.

LONG, C. J. In June, 1896, the plaintiff was the owner of a stock of groceries and general merchandise in the city of Grand Rapids. He was indebted to Edwin J. Gillis & Co., of New York, for merchandise, in the sum of $87.49. Defendant Griffin was acting as the attorney for Gillis & Co., and brought suit against the plaintiff in justice's court, recovering judgment for $87.49 damages and $3.25 costs of suit. Directly after the rendition of the judgment, Griffin made the necessary affidavit and filed it with the justice to obtain the immediate issuing of an execution. The execution was placed by Griffin in the hands of defendant Wisner, a constable, and defendant Payne, also

a constable, was sent by Griffin to assist Wisner in making the levy. The levy was made upon the entire stock of goods and fixtures in the store, claimed to be worth about $1,000, together with all the books of account, a quantity of wood, and a delivery wagon. An inventory and appraisal were made of the goods and property levied upon. The plaintiff claimed his exemptions, but insists they were never set out to him, though the defendants claim the exempt goods were set aside. The store occupied by the plaintiff had been rented from one Dubois, and to secure the rent a chattel-mortgage clause was inserted in the lease. The defendants assert that Dubois claimed there was $25 unpaid on this lease, and that an assignment was made of the lease to Gillis & Co. Defendant Payne, acting, as he claims, for Gillis & Co., then took possession of the exempt goods under this chattel-mortgage lease. The plaintiff claims to have made a tender of the amount due on the chattel-mortgage lease to the defendants, which was refused. The amount so tendered was $36, though the plaintiff claims there was nothing due to Dubois under the lease. The goods and property levied upon were advertised to be sold under the execution at 10 o'clock in the forenoon of the 20th of June, 1896. The property, except the exemptions, was sold on that day, and bid in by the defendant Griffin for the sum of $35. These goods were set apart and were held by the parties under the chattel-mortgage lease. On the trial it was claimed by the plaintiff that the sale was made and the goods struck off to Griffin before 10 o'clock, the hour at which the sale was advertised to take place. On the other hand, it is contended by the defendants that the sale was made at that hour. The court directed the jury that, if the sale under the execution was made before the hour advertised, it was prematurely made, and was therefore void, and that the defendants would be liable for the value of the property; and in regard to the exempt goods sold under the chattel-mortgage lease and bid in by Griffin, the court charged that the

plaintiff was entitled to recover their value as against the defendants if the jury found the tender was sufficient, or found that there was nothing due on the chattel-mortgage lease. The plaintiff had verdict for $640, and defendants bring error.

1. It is claimed by the defendants that the plaintiff has joined two distinct trespasses in the same action, in which separate and 'distinct parties committed the trespass; that, although the sale under the execution might be void, and defendant Wisner might be held liable as a trespasser from the beginning, his liability would be limited to the value of the goods he unlawfully disposed of under the execution, and that defendant Payne could not be held liable therefor; that Payne, as the authorized agent of Gillis & Co., under the mortgage, had a right to take possession of the exempt goods, and that, defendant Wisner having no right to the possession of those goods, Payne had a right to take possession, and Wisner could no longer be held responsible for Payne's subsequent acts. Counsel claim that the case falls within the rule laid down in *Strawbridge* v. *Stern*, 112 Mich. 16. In that case the plaintiff brought an action against Livingston & Block, copartners, and one Levy. Livingston & Block purchased a large quantity of goods from the plaintiff fraudulently, and afterwards turned over a small portion of them to defendant Levy. Plaintiff sued, and claimed a right to a judgment against all the defendants for the conversion of the entire stock of goods originally purchased from plaintiff by Livingston & Block. It was held that a joint action could not be maintained against the different defendants, as the conversions were distinct, and neither was in any way concerned in the conversion by the other. In the present case it appeared from the testimony that Griffin, acting as the attorney for the plaintiffs in the execution, directed both Wisner, and Payne, who were constables, to seize the goods. They were in joint possession when the plaintiffs in the execution took an assignment of the mortgage lease. The

114 MICH.—18.

exempt goods at this time were not separated out of the others when the plaintiff in this suit made demand for them. Both Wisner and Payne were then in possession, and Griffin was also there present. A tender was made for the exempt goods, not only to Payne, but to Wisner and Griffin, and refused. Mr. McKnight, attorney for the plaintiff in the present suit, testified:

"The day when they removed the goods away from the store I was there when the teams drove up and hauled them away; that is, they were loading up the exemptions and other stock of goods at the time while I was there. Both Payne and Wisner were in possession, and part of the time Mr. Griffin was there with them, and it was pretty hard to find out just who each was representing; they shifted about in such a way. * * * I was there at the time they were carrying them onto the wagons, and I demanded of both Wisner and Payne personally those goods, and also Mr. Griffin, who was there at the time, to deliver these goods to Wienskawski; and he said we could not have them, that they knew their business, and were going to take them away; and they did so."

We think the circumstances in the case and the testimony of plaintiff's witnesses tend to establish the fact that, after the mortgage lien was discharged by the tender, all three defendants acted in concert in disposing of the exempt goods, as it is apparent they also did in disposing of the goods levied upon under the execution.

2. It is contended that Payne had no authority to receive the money tendered. It is apparent that he was acting under the direction of Griffin in taking these goods under the mortgage lease. The firm of Gillis & Co. was doing business in New York, and the whole conduct of its business in relation to this matter was intrusted to Griffin. The tender was made to all of them,—Griffin, Wisner, and Payne,—and refused by each. Notwithstanding the tender, they proceeded with the sale, and did sell these exempt goods under this mortgage.

3. It is claimed that the court was in error in directing the jury that they might find the sale invalid if prema-

turely made.   We think there was no error in this.   From
the whole record it is apparent that the defendants com-
bined together to overreach the plaintiff, and, upon an
execution of less than $100, not only destroyed his business
by depriving him of a large stock of goods by the sale
under the execution, but also deprived him of his exemp-
tions, to which he was legally entitled.

The judgment is affirmed.

GRANT, MONTGOMERY, and MOORE, JJ., concurred.
HOOKER, J., did not sit.