[No. 15325.  Department One.  July 8, 1919.]

HANNA ENGSTROM, *Administratrix of the Estate of Ingeborg Turnquist, Respondent,* v.
CHARLEY E. PETERSON,
*Appellant.*[1]

WITNESSES (45)—COMPETENCY—TRANSACTIONS WITH PERSON SINCE DECEASED. Rem. Code, § 1211, forbidding testimony as to any transaction had with a person since deceased, does not exclude evidence as to whether a deed contained an interlineation of the deceased's name as grantee at the time it was executed, the deceased not having been present at the time of the transaction.

ALTERATION OF INSTRUMENTS (6, 12)—DEEDS—TIME OF ALTERATION—EVIDENCE—EFFECT ON TITLE OF GRANTEE. The presumption that an interlineation in a deed was made before execution is overcome by the positive testimony of one of the grantors that it was made afterwards, together with the appearance of the deed itself, so indicating.

SAME (8)—CONSENT OF PARTIES. After delivery of a deed, an alteration, inserting the name of an additional grantee, has no effect upon the grantee's title, even though it be with consent of the parties, in the absence of evidence that the deed was redelivered.

ESTOPPEL (20-23)—PREJUDICE TO PERSON SETTING UP ESTOPPEL. The grantee in a deed, which was recorded with an interlineation naming a woman as his wife as an additional grantee, is not estopped to assert sole title by the fact that he lived on the premises with the woman as his wife, and permitted her to occupy and use it as a home during his absence; nor by the fact that the two joined as husband and wife in a mortgage upon the premises to secure part of the purchase price; as it does not appear that she was misled to her prejudice.

[1]Reported in 182 Pac. 623.

HUSBAND AND WIFE (47)—COMMUNITY PROPERTY—EXISTENCE OF COMMUNITY. Property acquired by a man and woman not married, but living together as husband and wife, is not community property, and, in the absence of any trust relation, belongs to the one in whose name the legal title stands.

Appeal from a judgment of the superior court for King county, Smith, J., entered December 17, 1918, upon findings in favor of the plaintiff, in an action for partition, tried to the court. Reversed.

*H. B. Madison* and *Tucker & Hyland (S. H. Steele,* of counsel), for appellant.

*Elias A. Wright, Sam A. Wright,* and *Ralph Woods,* for respondent.

TOLMAN, J.—Respondent, as administratrix of the estate of Ingeborg Turnquist, deceased, instituted this action for the purpose of establishing that her decedent, in her lifetime, acquired title to an undivided half interest in a certain ten-acre tract of land in King county; that she was a tenant in common with appellant, the owner of the other undivided half interest, up to the time of her death, and prayed that the lands be partitioned. From a judgment establishing such title and tenancy and directing that partition be made, appellant brings the case here on appeal.

It appears that Ingeborg Turnquist, prior to the year 1901, lived in Tacoma in a small two or three room house owned by her, but standing on leased ground, and supported herself by going out by the day in the performance of domestic services. While so situated she met appellant, who was a sailor by occupation, employed on boats plying between Puget Sound points and San Francisco. About the year 1901, these persons began living together, and held themselves out as husband and wife, though in fact they were never married. With the exception of a

time when both were employed at Walla Walla, they continued to so live together in Tacoma, each continuing his or her gainful occupation as theretofore, appellant, of course, being absent for longer or shorter periods as his calling demanded. In 1908, appellant abandoned seafaring, the woman sold her home, for what amount does not appear, and they removed to King county near Kent, where they occupied rooms in a house belonging to, and occupied as a home by, one John Lybeck and his wife. On May 15, 1908, appellant purchased ten acres of land from the Lybecks for which he agreed to pay $600, and on that day he received a written receipt from John Lybeck for $200 paid in cash as a part of the purchase price; appellant testifying that this money was a part of his individual savings accumulated while employed at Walla Walla. After making the purchase, appellant went to Alaska, where he appears to have found employment for the summer, leaving the woman known as his wife still occupying the rooms in the Lybeck home. He returned in the fall, spent the winter there with her, and again went to Alaska for the summer of 1909. In November, 1909, having come back from Alaska with, as he says, some $900 as the fruits of his season's work, he went to the office of an attorney or notary in Kent with Mr. and Mrs. Lybeck, where a warranty deed was prepared and duly executed by Mr. and Mrs. Lybeck, conveying the ten acres of land theretofore purchased. The deed, which is in evidence, is upon a printed blank, generally known as the statutory form, and the blanks are filled by the insertion of the names of the Lybecks as grantors and the name of appellant as grantee, a description of the land, and the date, all completed in typewritten form.

As the deed now appears, after the name "Charley E. Peterson," typewritten, there appears, written with

a pen and in a hand totally dissimilar to the signatures of either of the grantors, the words, "and Ingeborg Peterson, his wife." Mr. Lybeck has since died, but his wife and brother were produced as witnesses upon the trial. The former testified that she, her husband, and appellant went to Kent on the day the deed bears date; that the deed, as there prepared and executed, was without the interlineation "and Ingeborg Peterson, his wife"; that the deed was delivered to appellant as executed; that they all returned home together and the deed was there shown to the woman she knew as Mrs. Peterson, who had remained at home while the deed was being executed in Kent, and who, upon the deed being exhibited to her, became angry because her name was not in it as a grantee; that Mr. Lybeck then explained to her that, as she was appellant's wife, the property became community property belonging to both without her name being written into the deed, and that, upon the death of either, the title would vest in the survivor; but according to Mrs. Lybeck, deceased declared that she would see that her name went into the deed.

Mrs. Lybeck further testified that appellant and his supposed wife took the deed with them to the part of the house which they occupied, and that later it was returned by one of them to Mr. Lybeck for the purpose of having it recorded, and that he did record it. And she further testifies that the interlined name was not in the deed when it was returned from the auditor's office, though in this she was manifestly in error, as the auditor's record shows the grantees to be "Charley E. Peterson and Ingeborg Peterson, his wife." The brother also testified that he saw the deed after its execution and delivery, though he was unable to fix the date definitely, and that the interlined name was not in the deed when he examined it. Appellant, a

witness in his own behalf, was asked: "At the time this deed was executed, were those words 'and Ingeborg Peterson, his wife,' written in there?" To which an objection was interposed, based upon the statute, Rem. Code, § 1211, which limits the testimony of a party in interest, where the adverse party sues or defends as executor or administrator. This statute has been considered in many cases, and frequently quoted; but it may not be out of place to again say that the testimony forbidden is "as to any transaction had by him with or any statement made to him by any such deceased or insane person." We do not think any of our decisions go to the extent claimed by respondent, or that the language of the statute will bear a construction in harmony with the ruling of the learned trial court in sustaining this objection. The undisputed testimony is that respondent's decedent was not present at the time the deed was executed; and if living she could not have testified from her own knowledge as to the condition of the deed at that time. The transaction of executing the deed was not had with her. Under the rule laid down in *Kauffman v. Baillie,* 46 Wash. 248, 89 Pac. 548, we think appellant should have been permitted to answer.

Notwithstanding the absence of appellant's testimony as to the condition of the deed when executed, we think there is enough in the record to finally determine this case. It is true that we have held that an alteration in a written instrument, in the absence of any explanation, may be presumed to have been made before the execution and delivery. *Wolferman v. Bell,* 6 Wash. 84, 32 Pac. 1017, 36 Am. St. 126; *Baylis v. Kerrick,* 64 Wash. 410, 116 Pac. 1082. But such presumption is, of course, rebuttable and must fall as soon as competent evidence to the contrary is produced. Here we have the direct and positive testi-

mony of one of the grantors to the effect that the interlined name was not in the deed when it was executed and delivered; and however mistaken she may be as to the name not being there at a later time, after the instrument was recorded, yet her testimony, corroborated to some extent, as it is by the testimony of her husband's brother, together with the appearance of the deed itself, which is before us, convinces us that the deed was altered after its execution. There is no evidence to support the theory that the deed was so altered by the grantors or either of them, or if so altered, that it was redelivered. And in the light of the testimony as to the words and actions of the deceased, it can only be held that the deed was altered by her, or by her procurement. Whether that be so or not, the overwhelming weight of authority is to the effect that no alteration of a deed after it has once been delivered will have any effect upon the grantee's title. *Abbott v. Abbott*, 189 Ill. 488, 59 N. E. 958, 82 Am. St. 470; *Clark v. Creswell*, 112 Md. 339, 76 Atl. 579; *John v. Hatfield*, 84 Ind. 75; *Waldron v. Waller*, 65 W. Va. 605, 64 S. E. 964, 32 L. R. A. (N. S.) 284. In the latter case is an extensive note and many authorities are cited. This is the rule, even though the alterations be made with the consent of the parties. Such being the law, at the moment the deed to appellant was executed in the office of the notary, as testified to by Mrs. Lybeck, and delivered to him, the title vested in appellant, and could not be thereafter divested, except by operation of law or some act of his which the law will recognize as his deed, or as estopping him to deny title in another. We have only to inquire whether there is any estoppel.

Evidence was introduced to show that appellant, at about the time the deed was executed, built a house

on the land with the money which he brought back from Alaska, and thereafter he and his supposed wife occupied the same as their home; the woman, during the frequent absences of appellant in Alaska or elsewhere, as he might find employment, raising a garden and chickens by her own effort; and on one occasion a brother and his eleven-year-old son did some clearing of the land for her, but charged her nothing for their work. It is also argued that she must have received money from the sale of her house in Tacoma, and must have put the money so received into the purchase of this land or its improvement. But there is not a syllable of testimony in the entire record to the effect that she ever received any such money, or if she did, what disposition she made of it. It also appears that a portion of the purchase price of the land was never paid, and that in 1912, to secure this unpaid balance of the purchase price, and also a sum of money then borrowed, a note, secured by a mortgage upon the land for $500, was executed by appellant and the deceased, in the latter of which they were described as Charley E. Peterson and Ingeborg Peterson, his wife; and these instruments so executed were delivered to Lybeck. In view of the well known custom of money loaners and those who accept mortgages to require both husband and wife to join in the execution of a mortgage, though it may pledge only the separate property of one, and in view of the situation of these parties and the fact that they at all times concealed the illicit nature of their relations, we see nothing which can be held to establish an estoppel.

"The doctrine of estoppel should not be held to create title to land unless strong equitable reasons exist in support of it." *Murray v. Briggs*, 29 Wash. 245, 69 Pac. 765.

"It is well settled that the representation of the party to be estopped must have been really acted upon, otherwise no estoppel arises." *Bisbee v. Carey,* 17 Wash. 224, 49 Pac. 220.

"The estoppel, if any, operates only in favor of those who have been misled to their injury, and they alone can set it up." *Smith v. King County,* 80 Wash. 273, 141 Pac. 695.

After a careful consideration of all of the testimony in the case, we find nothing which will remove the title to the property involved from the operation of the rule laid down in *Stans v. Baitey,* 9 Wash. 115, 37 Pac. 316, and *In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960, to the effect that property acquired by a man and woman not married, but living together as husband and wife, is not community property, and, in the absence of some trust relation, the land must be regarded as belonging to the one in whose name the legal title stands.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded with directions to dismiss the action.

MITCHELL, MAIN, and MACKINTOSH, JJ., concur.

HOLCOMB, C. J., took no part.