[No. 15613.    Department One.    June 10, 1920.]

## KAROLINA BEYERLE, *Appellant*, v. GEORGE BARTSCH, *Respondent*.[1]

WAR—ALIEN ENEMIES—TOLLING STATUTES OF LIMITATIONS—VOID MARRIAGE TO ALIEN. The contraction of a bigamous marriage with an alien enemy, void because of another wife living, does not entitle the woman to the benefit of the Trading with the Enemy Act, October 6, 1917 (U. S. Comp. St. Ann. Supp. 1919, §§ 3115½a-3115½j), and Rem. Code, § 171, excluding the duration of the war from the period limited for the commencement of actions.

HUSBAND AND WIFE (47, 48)—COMMUNITY PROPERTY—EXISTENCE OF COMMUNITY—VOID MARRIAGE. Property acquired by a woman while living with a man after a bigamous marriage is her separate property.

MARRIAGE (14-1)—VALIDITY—BIGAMOUS MARRIAGE. A bigamous marriage is absolutely void, under Rem. Code, § 7151, prohibiting marriages when either party has a wife or husband living; although Id. § 7162 defines voidable marriages and § 983 authorizes a decree of nullity where there is any doubt as to the facts.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 2, 1919, upon findings in favor of the defendant, in an action to establish a claim against the estate of a decedent, tried to the court. Affirmed.

*Russell & Blinn*, for appellant.

*Smith, Chester & Brown*, for respondent.

MACKINTOSH, J.—The appellant sues the respondent, in his official capacity as administrator with the will annexed of the estate of Frederick Stolley, deceased, for the value of services she rendered Stolley during his lifetime. On May 11, 1917, Stolley's will was admitted to probate, and on May 22, respondent was appointed administrator with the will annexed, and qualified on November 15, 1917; on the same day, an order

[1]Reported in 190 Pac. 239.

was made for publishing notices to creditors, and on April 16, 1918, the appellant presented her claim, which was rejected, of which she was notified on July 22, 1918, and thereafter, on August 26, 1918, began this action.

Several defenses are presented to the action, but only one will be noticed here; that is, that the action was not begun within thirty days after the appellant received notification of the rejection of her claim. The appellant, in answer to this defense to the action, claims that she was married to Charles D. Schabel, who was a citizen of Germany, and who was taken into custody as an alien enemy March, 1918, and was still interned at the time of the trial of the action, May 26, 1919; that, during Schabel's internment, she learned that, at the time of her marriage to him, he had a wife living from whom he had not been divorced. She thereupon began an action to have her marriage annulled, which proceeded to judgment annulling the marriage. This judgment was entered two days prior to the trial of the present case. From these facts she argues that she, having been the wife of an alien enemy, was entitled to the benefit of the act of Congress, known as the "Trading with the Enemy Act," passed October 6, 1917, (U. S. Comp. St. Ann. Supp. 1919, §§ 3115½a—3115½j) and of § 171, Rem. Code, which provides that, when a person shall be an alien subject or citizen of a country at war with the United States, the time of the duration of the war shall not be a part of the period limited for the commencement of an action, and that the existence of the state of war between the United States and Germany had tolled the statute, and that she was not, therefore, bound by the statute which calls for the filing of an action upon rejected claims within thirty days after rejection; and that, although her marriage to Schabel had been annulled

prior to the trial of the present case, where an obstacle to the maintenance of an action exists at the time the action is begun and such obstacle is removed before the time of trial, it does not prevent the hearing and determination of the action.

As we view the facts of this case, the position taken by the appellant does not answer the objection raised to her suit. Her marriage with Schabel having been bigamous, she was, in the eyes of the law, never married to him, the marriage being void *ab initio,* and, therefore, not having been the wife of an alien enemy, she did not herself become an alien enemy, and whatever statutes, Federal and state, might operate in suspending litigation between citizens of this country and alien enemies, could not operate either for or against her, and the statute which provides for the beginning of actions upon rejected claims was binding upon her.

We have held that there is no community property without lawful marriage, the property acquired by a woman who has contracted marriage with a man having a wife living, during the time she was living with her purported husband, is her separate property. *Stans v. Baitey,* 9 Wash. 115, 37 Pac. 316; *In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684; *Engstrom v. Peterson,* 107 Wash. 523, 182 Pac. 623. Therefore, appellant's claim for services rendered to Stolley was her separate property, as she alleged in her complaint. Section 7151, Rem. Code, provides that marriages are prohibited ''when either party thereto has a wife or husband living at the time of such marriage.'' Such marriages are therefore void and not merely voidable. The general law is as stated in 18 R. C. L., page 445:

''At common law and in the absence of statutory provision having a modifying effect, a civil disability,

such as having a lawful living husband or wife by a former marriage, renders a subsequent marriage absolutely void *ab initio,* in consequence of which it is good for no legal purpose, and the incidents which attend and follow on a valid marriage are not, in the absence of statute, acquired by the parties. . . . . In many jurisdictions a bigamous marriage is expressly declared by legislative enactment to be illegal and void from the beginning, and the effect of such a statute is not altered by the fact that it also provides for actions to annul such marriages.''

The fact that actions of annullment are taken to declare bigamous marriages void does not have the effect of making such marriages voidable, for, as stated in 18 R. C. L., page 441:

''A marriage void in its inception does not require the sentence, decree or judgment of any court to restore the parties to their original rights or to make the marriage void, but though no sentence of avoidance is absolutely necessary, yet as well for the sake of the good order of society as for the peace of mind of all persons concerned, it is expedient that the nullity of the marriage should be ascertained and declared by the decree of a court of competent jurisdiction. Another reason why a judicial determination of such a marriage ought to be sanctioned is that an opportunity should be given, when the evidence is obtainable and the parties living, to have the proof of such marriage being void presented in the form of a judicial record, so that it cannot be disputed or denied. This right is granted in some jurisdictions by express statutory provision.''

The statutes of this state do not expressly provide for the annullment of void marriages, but § 7162, Rem. Code, defines what marriages are voidable, and § 983, Rem. Code, provides:

''When there is any doubt as to the facts rendering a marriage void, either party may apply for, and on proof obtain, a decree of nullity of marriage.''

Concluding that she was never married to Schabel, her claim was her separate property and she was bound to pursue her action upon it, after its rejection, within the time fixed by law, she not having been the wife of an alien enemy and not entitled to any extensions accorded to alien enemies by Federal or state statutes during the period of war. The lower court was right in determining that appellant's action was barred, and the judgment is affirmed.

HOLCOMB, C. J., PARKER, MITCHELL, and MAIN, JJ., concur.