[No. 18440. Department One. April 28, 1924.]

F. C. CARR, *as Administrator etc., Appellant,* v. EDWARD
BELL *et al., Respondents.*[1]

APPEAL (440)—REVIEW—HARMLESS ERROR—PLEADING—STRIKING
OUT. Error in striking an amended complaint is harmless where
plaintiff was allowed to introduce all the evidence that he was en-
titled to introduce to show a cause of action.

EVIDENCE (34)—BURDEN OF PROOF—SHIFTING—JOINT TORT FEAS-
ORS—ADMISSIONS IN PLEADING. Where defendants were jointly
sued for the alleged joint embezzlement and conversion of bonds,
admissions in their answer alleging possession under separate gifts
to each do not shift the burden of proof.

APPEAL (455)—HARMLESS ERROR—EVIDENCE. Where the court
took the case from the jury, error cannot be assigned on cross-
examination showing relationship and acquaintance which went
only to the interest of the appellant.

HUSBAND AND WIFE (47)—COMMUNITY PROPERTY—EXISTENCE OF
COMMUNITY. The fact that property was acquired by a man and
woman, not married, but living together, would not show a com-
munity interest, but it would belong to the one in whom the title
stands.

TROVER AND CONVERSION (15, 19)—PARTIES (59)—MISJOINDER OF
DEFENDANTS—JOINT LIABILITY. The misjoinder of two persons,
guilty of separate conversions of different personal property
belonging to an estate, but sued jointly for a joint conversion, de-
feats recovery against either, unless the plaintiff elects at the trial
to proceed against one of them and dismiss as to the other; in
view of Rem. Comp. Stat., § 296, providing that several causes of
action united in one complaint must affect all the parties.

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered November 26,
1923, upon granting a nonsuit, dismissing an action for
conversion. Affirmed.

*P. C. Kibbe,* for appellant.
*Ellis, Fletcher & Evans,* for respondents.

[1] Reported in 225 Pac. 230.

Holcomb, J.—This action was for the recovery by appellant as administrator of $500 represented by a bank certificate of deposit, $1,500 in liberty bonds, and $250 worth of stock, furniture and other personal property alleged to have been embezzled and converted by respondents from the estate of the decedent.

After the original complaint an amended complaint was served and filed by appellant, which, among other things, alleged:

"That the defendants live together alone on a farm near Rainier, Washington, and have lived together alone, whether illicitly cohabiting together or as close associates, and have so lived together either illicitly cohabiting or as close associates for about thirty years last past, and their associations together are such that the interests of one were the interests of the other, and the home of one was the home of the other."

It is also alleged in the amended complaint that:

"The defendants have in their possession at their joint home, and have taken away from the home of the deceased, and that they so took it jointly and as a joint venture the following described property"—(the property hereinbefore referred to)

A motion by respondents to strike the amended complaint as containing scandalous, sham and frivolous matter was granted, and it was ordered that the complaint be stricken and by the clerk destroyed. The complaint was brought before us by a separate bill of exceptions accompanying the statement of facts.

After the striking of the first amended complaint, a second amended complaint was served and filed by appellant, in which the charge was stated as follows:

"That on or about February 4, 1921, defendants embezzled, stole, took and carried away the following described property," (describing the property hereinbefore referred to.)

To this complaint respondents answered separately, each answer being a general denial and each containing an affirmative defense. The answer of respondent Bell, after the general denial, affirmatively avers:

"That during her lifetime Rosy Reill gave to this answering defendant the certificate of deposit on the Roy State Bank in the sum of $500, which said certificate of deposit was cashed by this defendant prior to the death of said Rosy Reill."

The answer of respondent Ellen Reill, after her general denial, alleges affirmatively:

"That during her lifetime Rosy Reill gave to this defendant certain liberty bonds and the chickens, pigs and other livestock and some articles of personal property. That no property was taken from the home of Rosy Reill except the property expressly designated by Rosy Reill and given by her to this answering defendant before the death of Rosy Reill."

Upon the trial before the court and a jury, appellant, after having testified to his official capacity, testified that he talked to Ellen Reill, one of respondents, about this property. He testified:

"They lived together, yes, and when I went there Mr. Bell wasn't there, but I talked with Miss Reill in regard to it and asked her about this money, this certificate of deposit and also about the bonds. She said that she thought Mr. Bell had the certificate of deposit; that Rosy had given it to him, and she said she didn't know about the bonds. Well, I asked her if there wasn't some bonds and she said 'Well, there might have been.' I asked her whether she knew whether they were given to Mr. Bell or not, and she said she didn't know, might have, and I asked her how much in bonds there were and she said she didn't know. Well, I asked her if she didn't have some idea how much there was, whether there was a hundred dollars or a thousand dollars or some idea, and she said there might have been fifteen hundred dollars' worth, and I

said 'Then you don't know where they are' and she said 'No, she didn't'; and I left there. Q. You asked her in regard to the five hundred dollars, did you? A. Well, I asked her in regard to that and she said that Rosy had given that to Mr. Bell. Q. Did you afterwards see Mr. Bell? A. Yes, I went back then later on and found Mr. Bell at home. I asked him in regard to the bonds and money and he said Rosy had given him the money, and he knew nothing about the bonds at all, never had seen them; didn't know where they were and nothing of them.''

There was some other testimony going to the relations between decedent and other members of her family. Having introduced this testimony, appellant rested his case, whereupon respondents moved for nonsuit, for the reason that appellant had failed to produce any evidence to sustain a cause of action. The motion was granted and the case dismissed.

Appellant's first complaint of error was in striking and expunging from the record his amended complaint.

Whether the trial court committed a technical error in striking the entire first amended complaint or not, it constituted no prejudice to appellant. All the evidence he was entitled to introduce to show a cause of action against respondents, he did introduce. The burden was not upon respondents to justify in the action, for they had not admitted any unlawful conversion or embezzlement, but had alleged each a separate gift to him or her. Appellant's evidence tended only to show that each of the respondents made separate admissions that the certificate of deposit had been given to Mr. Bell, and that neither of them knew anything about the bonds. It must be remembered that appellant, in his first amended complaint, specifically alleged that the taking by respondents was joint, and therefore would constitute a joint tort. The second amended

complaint was to the same effect, although the word "joint" or "jointly" is not used. Recovery was demanded against both of respondents in a total sum. Therefore appellant was not deprived of introducing any material and competent evidence because of the striking and expunging of the first amended complaint. *State v. Lorenz*, 22 Wash. 289, 60 Pac. 644.

The second contention of appellant, that the burden of proof was on respondents because of admissions in the answers, has no merit. It is probable that, had respondents been sued separately and answered admitting possession of the property and claiming under a gift, the burden would shift in such case so that it would be incumbent upon one so sued to assume the burden and prove the gift; but here respondents were charged with a joint tort, and no admission of any kind is in either pleading.

It is further contended that the court erred in allowing cross-examination of appellant as to his relations with a certain Mrs. Katherine Laramie, mother of Rosy Reill. All that the cross-examination covered was the relation and acquaintance, if any, between Katherine Laramie and appellant, and went to the question of the interest of appellant himself. At all events, there was nothing prejudicial in it, in view of the action of the court taking the case from the jury.

The principal questions for determination are claimed error of the court in granting a nonsuit, and in granting judgment against appellant in favor of respondents.

Appellant insists that he was entitled to show that these respondents lived together and must have been presumed to have a community of interest; and cites *Engstrom v. Peterson*, 107 Wash. 523, 182 Pac. 623.

The cited case does not sustain appellant. That case decided that property acquired by a man and woman not married but living together as husband and wife is not community property and, in the absence of any trust relation, belongs to the one in whom the legal title stands. Conceding that the property sought to be recovered in this action was taken by either or both of respondents, under that decision it would not be constituted community property.

Appellant further contends that he was entitled to judgment against either or both respondents for the tort committed by either one of them, under the rule that a person may pursue any one or all guilty of tort and recover against any or all separately or jointly. Citing *Lovelace v. Miller*, 150 Ala. 422, 43 South. 734, 11 L. R. A. (N. S.) 670, 14 A. & E. Annot. Cas. 1139, and notes; *Jones v. Seattle*, 51 Wash. 245, 98 Pac. 743; *Woods v. Rolfe*, 128 Wash. 55, 221 Pac. 982.

Appellant apparently confuses the rule. There is no doubt, as we have decided many times, including the two cases cited above by appellant, that it is a general rule that, in an action of tort, a misjoinder of defendants does not defeat recovery against any or either of the defendants proven to be guilty. Note, A. & E. Annot. Cas., *supra*, at p. 1142, and cases cited.

But there are exceptions to the rule.

"Actions brought to recover for a tort which cannot in point of law be joint are an exception to the general rule, and in such a case a misjoinder of parties defendant defeats the action." Notes to same case, p. 1143.

In *Strawbridge v. Stern*, 112 Mich. 16, 70 N. W. 331, it was held that two persons cannot be joined as defendants in conversion where the conversions are distinct and neither was in any way concerned in the conversion of the goods by the other. In the course of the opinion it was said:

"The cases permitting the joinder of defendants are limited by the rule that such a joint action cannot be maintained against different defendants, where separate and distinct trespasses are relied upon, in which the parties are not jointly concerned. See 1, Chit. Pl. 86. In *Dahms v. Sears*, 13 Ore. 47, 11 Pac. 891, it is said: 'In an action of that character the plaintiff must elect at the trial as to which of the defendants he will proceed against. If he fail to do that, and submit the case to the jury, he will be entitled to no verdict'."

So in this case: Had appellant elected at the trial to proceed against one defendant shown *prima facie*, conceding that it was, to have some of the property in his or her hands, and dismissed as to the other, his motion no doubt would have been proper, and probably would have been granted; but such an election and motion was not made. The rule is also stated in 15 Ency. Pl. & Pr., 562, as follows:

"Persons who act severally and independently, each causing separate and distinct injury, cannot be sued jointly, even though the injuries may have been precisely similar in character and inflicted at the same time. A joint tort is essential to the maintenance of a joint action. For separate and distinct wrongs in no wise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions, and not jointly in the same action."

Our code also covers the matter. Rem. Comp. Stat., § 296 [P. C. § 8380], as follows:

"The plaintiff may unite several causes of action in the same complaint, when they all arise out of,—

"6. Claims to recover personal property, with or without damages . . .

"8. The same transaction.

"But the causes of action so united must affect all the parties to the action, . . . and must be separately stated."

See, also: *Tackaberry v. Sioux City Service Co.*, 154 Iowa 358, 132 N. W. 945, Ann. Cas. 1914A 1276; *Courtney v. Louisiana R. & Nav. Co.*, 131 La. 575, 59 South. 994.

In fact, so far as we can discover, the rule is universal that there is a misjoinder of defendants where there is no joint liability for loss.

Having elected to pursue respondents jointly and not severally, the nonsuit and judgment thereon was properly granted at the conclusion of appellant's evidence under either complaint.

The judgment was right and it is affirmed.

MAIN, C. J., TOLMAN, and PARKER, JJ., concur.